■ BARBARA R. STOLIKER et al., Respondents, v. JAMES E. CRANDALL et al., Appellants.— STALEY, JR., J. Appeal from a judgment of the Supreme Court, Albany County, entered upon a jury verdict in favor of the respondents in the total amount of $23,212.80, and from an order of the same court denying appellants' motion to set aside the verdict, and for a new trial on all the grounds

specified in CPLR 4404, including excessiveness. Respondent, Barbara R. Stoliker, sustained personal injuries when, on June 6, 1964, she fell from the bathroom window of a first floor apartment occupied by her and her husband and owned by the appellants. Since the jury has found for the respondents, the question on review here is whether the weight of the evidence supports the jury's verdict. (See, e.g., *MacArthur* v. *Coxon Real Estate*, 28 A D 2d 1191, mot. for lv. to app. den. 21 N Y 2d 643.) The jury could properly find from the evidence that Barbara R. Stoliker sustained her injuries as she was taking clothing from a clothesline attached to the outside frame of the bathroom window when the hook supporting the clothesline tore loose from the window frame under the weight of the clothes upon the line and, as the line fell, it pulled her out of the window. Although disputed, the jury could also properly find that the hook in question was attached to the window frame in the fall of 1963 by the defendant, James Crandall, and was affixed thereto by means of a nail rather than by a screw, and that the hook tore loose from the window frame on the third time that it was used. The Trial Judge charged the jury on the general law of negligence, and also charged that Barbara Stoliker "had the right to rely upon the provisions of a State law under which the defendants, as owners of the three-apartment building, were obliged to keep the premises in good repair, and free from anything that might be dangerous to life and health." He did not specify the law to which he referred, but we assume that he was making reference to sections 40 and 174 of the Multiple Residence Law. The appellants contend that a hook driven into the side of a building to support a clothesline pulley is not a part of the dwelling which the owner is required to keep in good repair under the Multiple Residence Law, and that the respondent failed to prove a cause of action in negligence, since there is no proof of actual notice to them, nor any proof of any defect in the hook for a sufficient length of time to charge them with notice and, if defective, it was not such a defect that would be observed on inspection, and that such notice is a prerequisite to recovery. Assuming that the Multiple Residence Law is not applicable to the facts of this case, the jury could, as we have said, properly conclude that James Crandall affixed the hook to the building and, having assumed to so act, was under a duty to act carefully. Since the jury could also properly conclude that the hook tore loose on the third time it was used, the jury would also be justified in concluding that the installation was negligently made, or that the type of hook used was not reasonably suitable for the purposes for which it was to be used and that the appellants were liable. (*Marks* v. *Nambil Realty Co.*, 245 N. Y. 256; *Siskin* v. *Katz*, 249 App. Div. 659; *Moran* v. *Bendora Realty Corp.*, 259 App. Div. 1035.) Even though appellants argue that there was no proof of actual or constructive notice to them of a defective condition, the trial court did not charge the requirement of actual or constructive notice, and appellants made no request for such a charge. Under the general rules of negligence, as charged by the trial court, and including the requirements of statutory law, it was within the province of the jury to determine the questions of negligence on the part of the appellants and of contributory negligence on the part of the plaintiff wife which have been decided in favor of the respondents. (*Tymann* v. *National Sav. Bank of City of Albany*, 30 A D 2d 881.) We are also of the opinion that the jury would have been justified in finding that there was a violation of section 174 of the Multiple Residence Law, and that the hook installed in the window frame to hold a pulley for a clothesline is part of the dwelling which the owner was required to keep in good repair. (*Herring* v. *Slattery & Bros.*, 291 N. Y. 794; *Polackoff* v. *Sonn & Co.*, 264 N. Y. 702; *Rodriquez* v. *Levin*, 36 Misc 2d 239.) Judgment and order affirmed, with costs. Gibson, P. J., Herlihy, Staley,

Jr., and Gabrielli, JJ., concur in memorandum by Staley, Jr., J. Reynolds, J., dissents, and votes to reverse and dismiss the complaint, in a memorandum. Reynolds, J. (dissenting). The judgment should be reversed and the complaint dismissed upon the grounds that no actionable negligence was proven against the defendants and it affirmatively appears that there was contributory negligence on the part of the respondent Barbara Stoliker. In order to understand what is involved and what actually occurred here, it is necessary to go more deeply into the testimony of the plaintiffs-respondents at the trial. Mrs. Stoliker, who fell out of this first floor apartment window 12 feet to the ground, described the clothesline and its operation, and Mr. Stoliker, her husband, related what he knew about the occurrence. It is described in substance as follows: there was a hook on the window casing to which was attached a pulley — out in the yard there was another hook and another pulley. A clothesline, *significantly* purchased and installed by the respondents, was threaded through the pulleys so that there were two lines between the pulleys. To put the clothing out, it would be affixed to one line by a clothespin and by pulling one cord it would be moved out into the yard. To get the clothing in, a pull on one of the cords would bring the washing to the window where the clothespins would be detached and the laundry removed piece by piece until the line was clear. There was a substantial sill to be seated upon during this operation. This is a very simple operation, used weekly by millions of people in this country. The apparatus is designed to be reasonably secure when tested by the weight of an ordinary washing on the line. It, of course, was not designed to hold the weight of a person, nor strong enough to permit the tugging at a large beach towel stuck in a fence. Respondents' version and, of course, the only version in the case, was that it had started to sprinkle and Mrs. Stoliker wanted to get her clothes off the line. She started the process described above to bring in her clothes, but was having difficulty because a large beach towel had gotten in the fence — as her husband describes it, it was "stuck in the fence". He told her to wait and he would go out in the backyard and dislodge the towel from the fence. She admits that she did not wait, however, and continued to tug at the line and in her own words, the next thing she remembers was that she was on the ground. She does not know and the record does not show whether she lost her balance and fell out of the window, her weight pulling the hook out, or whether her tugging at the line with the large towel caught on the fence pulled out the hook and she fell. In either case this accident resulted from nothing that the appellants did or failed to do. Certainly the landlord could not reasonably foresee either of these occurrences and the proximate cause of this accident was the carelessness and negligence of Mrs. Stoliker herself. *It is further significant* that at the time of the installation of the clothesline by the respondents they examined and inspected this hook and pulley and made no complaint to the landlord that it was unsuitable or unsatisfactory for the purpose. There was no actual or constructive notice of any defect in the hook. There was no evidence that it was installed improperly; that it was not a proper hook to utilize for suspending clotheslines; that it was defective in any manner. "The plaintiff must fail if the evidence does not show that the injury *was the result* of some cause for which the defendant is responsible." (*Ruppert* v. *Brooklyn Hgts. R. R. Co.*, 154 N. Y. 90, 95, emphasis added; *Bourcheix* v. *Willow Brook Dairy*, 268 N. Y. 1, 7; *Scharff* v. *Jackson*, 216 N. Y. 598, 602; 2 Harper and James, Law of Torts [1956], p. 1068.) On the state of the record the jury could only speculate that appellants were somehow responsible for the hook pulling loose. The fact that the landlord had liability insurance was injected into the case by respondents' counsel on recross who asked the question: " Q. Mr. Crandall did you give anybody a statement as to how this accident happened? A. Yes, my own

insurance company, I believe." Of course, Mr. Crandall knew nothing about how the accident happened and respondents' counsel knew it, and it is hard to believe that this experienced counsel was not hoping for the very result he got. Surely, some outside factor — sympathy, bias or prejudice — prompted the jury to return the verdict it did. The judgment and order should be reversed and the complaint dismissed, or at the least set aside and a new trial ordered.